UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPITIOUS, LLC and CONNACHT, LLC, | ) ) ) | No. 18 CV 1405 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Magistrate Judge Young B. Kim |
| BADGER MUTUAL INSURANCE COMPANY, a corporation, and SOCIETY INSURANCE, a mutual company, | ) ) ) ) ) ) ) | February 7, 2019 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Propitious, LLC ("Propitious") and Connacht, LLC, ("Connacht"),[1] both Illinois companies, bring this 18-count suit against Defendants Badger Mutual Insurance Company ("Badger") and Society Insurance ("Society"), both Wisconsin companies, seeking to recover proceeds under two separate insurance policies for water damage to a building owned by Propitious and occupied by Connacht. Before the court is Society's motion to dismiss Counts VI, VII, XIII, XV, and XVI of the complaint with prejudice. For the following reasons, Society's motion is granted to the extent that the claims are dismissed without prejudice:

**Background**

The following facts are drawn from Plaintiffs' amended complaint and are presumed to be true for purposes of ruling on the current motion. Propitious owns a

---

[1] Both Propitious and Connacht have one member, Cathal Ó Céidigh.

two-story building located at 2542-2548 North Southport Avenue in Chicago, Illinois ("the Property"). (R. 36, First Am. Compl. ¶ 12.) Propitious insured the Property under a policy issued by Badger, which provided coverage for property damage, lost rental income, and personal property included with the building. (Id., Ex. 1.) Connacht leased the first floor of the Property, where it operated the Crossing Tavern, a restaurant and sports bar. (Id. ¶¶ 13-14.) The Crossing Tavern was insured by Society, which provided coverage for personal property and lost business income. (Id., Ex. 2.) On December 16, 2016, multiple water pipes burst in one of the second-floor residential apartments, causing damage to the Property and its contents. (Id. ¶¶ 50, 56.) Connacht sustained extensive damage to its personal property and other assets used in the operation of the Crossing Tavern. (Id. ¶ 64.) Connacht suspended operations of the Crossing Tavern until repairs could be completed. (Id. ¶ 61.) Propitious notified Badger of the water damage to the Property, and Connacht notified Society of the personal property damage and business interruption at the Crossing Tavern. (Id. ¶¶ 62-63.)

Connacht, Society, Propitious, and Badger each investigated the damage caused by the pipes bursting. (Id. ¶¶ 65-69, 157-65.) Following its investigation, Connacht submitted a loss claim to Society totaling $225,453.11 for damaged audiovisual equipment. (Id. ¶ 82.) On January 26, 2017, the parties met to jointly discuss the damage to the Property and the Crossing Tavern and identified a potential coverage dispute regarding which insurer, Badger or Society, would be responsible for certain damaged items. (Id. ¶ 84.) That same day, Society paid

Connacht $25,000, which primarily covered food, alcohol, and spice losses. (Id. ¶ 121.) Based on its investigation, Society estimated the damage to the audiovisual equipment to be $139,635.17, but alleged that because certain items were a permanent part of the building, $78,482 of that amount should be covered by Badger. (Id. ¶¶ 101,112-16, 137-40, 148, 237.) On February 6, 2017, Connacht received a letter from Society, which included a report detailing its investigation of the damage to Connacht's audiovisual equipment, various inventory reports for food and alcohol, and a check for $42,546.49. (Id. ¶ 120.) In response, Connacht submitted a revised damage estimate of $199,589.65 for the audiovisual equipment, and requested that Society pay that amount as well as any other outstanding personal property claims. (Id. ¶¶ 130-35, Ex. 9.)

Connacht also hired an accounting and consulting company to investigate its business interruption claim. (Id. ¶ 204.) The consultant estimated the Crossing Tavern's business interruption losses to be $1,455,087 over a 12-month period based on, among other things, the restaurant's inability to increase its prices and to host a series of sports-related events. (Id. ¶ 215.) Society hired a forensic accountant to investigate Connacht's business interruption claim, who valued Connacht's lost business income at $74,595, (id. ¶ 221), which Society has paid, (id. ¶ 315).

Propitious submitted a loss claim to Badger estimating damages to the Property at nearly $1 million. (Id. ¶¶ 160-61.) On March 21, 2017, Badger sent Propitious a "Statement of Loss" estimating the total damage to the Property to be $306,969.61 and assigning coverage responsibility to Society for $199,617.45 based

on its investigation and damage estimates. (Id. ¶¶ 174-77.) The following week, Badger sent Propitious a check for $246,016.76 as payment pursuant to the Statement of Loss. (Id. ¶ 178.) Plaintiffs jointly wrote to their respective insurers, informing them of the dispute between the insurers regarding which of them is responsible for certain items and noting that Propitious's contractor required a $395,000 deposit to begin repairs. (Id. ¶ 179.) On March 30, 2017, Connacht sent Society, at its request, Badger's Statement of Loss. (Id. ¶ 182.) Society denied responsibility for the amount claimed by Badger, noting that the items identified in the statement are "'fixtures, machinery, and equipment which are a permanent part of the described building or structure as defined by the Badger Policy.'" (Id. ¶ 262.) Plaintiffs repeatedly informed their respective insurers about the outstanding coverage dispute regarding the $199,617.45 in damages. (Id. ¶ 184.) Both insurers refused to pay any of the $199,617.45, and instead, maintained that the other insurer is responsible for payment. (Id. ¶¶ 189-90.)

On February 23, 2018, Plaintiffs brought this action against Badger and Society. (R. 1, Compl.) Society moves to dismiss Counts VI and XIII (consumer fraud claims), Count VII (bad faith claim), and Counts XV and XVI (intentional and negligent misrepresentation claims), asserting that the underlying allegations are not only false, but also legally deficient. (R. 41, Def.'s Mot. at 1.) Society further contends that the instant matter amounts to nothing more than an insurance coverage dispute between the parties. (Id.) Plaintiffs maintain that they have alleged sufficient facts to support their claims. (R. 50, Pls.'s Resp. at 3.)

4

Analysis

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give the defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

A. **Misrepresentation Claims (Counts XV & XVI)**

The court first addresses Society's contention that Plaintiffs have not adequately stated a claim for intentional or negligent misrepresentation. (R. 41, Def.'s Mot. at 7-12.) Specifically, Society argues that Plaintiffs cannot maintain a

separate cause of action for misrepresentation where the facts allege a mere insurance coverage dispute. (Id. at 11.) Society further argues that Propitious cannot state a misrepresentation claim because it is not insured under the Society policy. (Id.) Plaintiffs maintain that Society not only misrepresented the coverage offered by its policy, but it also falsely claimed that Badger was the only insurer responsible for providing coverage for certain damages. (R. 50, Pls.'s Resp. at 11.)

As an initial matter, because Propitious is not an assignee or an insured of the Society policy, the court agrees with Society that it did not owe Propitious a duty in handling Connacht's claim, and thus, Propitious is precluded from suing Society in a direct cause of action for misrepresentation. *See Martin v. State Farm Mut. Auto. Ins. Co.*, 348 Ill. App. 3d 846, 850 (2004) (holding that "the duty in the handling of claims is owed only to the insurance company's insured" and "does not extend to benefit an adversary third-party claimant"). Accordingly, the court's analysis will be limited to whether Connacht has alleged sufficient facts to support its misrepresentation claims against Society.

 1. **Intentional Misrepresentation Claim (Count XV)**

The court finds that Connacht has not sufficiently stated a claim for intentional misrepresentation under Illinois law. The elements of an intentional misrepresentation claim are as follows: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Avon*

*Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15 (internal citation omitted). Additionally, Federal Rule of Civil Procedure 9(b) requires a plaintiff who asserts a fraud claim to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although fraudulent or deceptive intent "may be alleged generally," Rule 9(b) requires a plaintiff to describe the "circumstances" of the alleged fraud with "particularity." *Id.* Accordingly, a plaintiff must include such information as "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008), or, to put it differently, the "who, what, where, when and how" of the alleged misrepresentation, *Bank of Am., N.A., v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Connacht alleges that Society intentionally misstated or omitted information regarding its insurance claims process to induce Connacht to purchase its insurance policy. (R. 36, First Am. Compl. ¶¶ 402, 404.) Connacht further alleges that after Connacht submitted its claim, Society misrepresented the damages covered under its policy to induce Plaintiffs to seek coverage for the disputed items from Badger, even though Society was responsible for providing coverage for these items. (Id. ¶¶ 402, 405.) However, Connacht fails to allege, as required under Rule 9(b), what specific false statements Society made to Connacht when Connacht purchased the policy. *See Bank of Am.*, 725 F.3d at 818. Instead, Connacht describes Society's alleged

7

mishandling of Connacht's claim nearly a year after it purchased the policy. But under Illinois law, "in order to constitute fraud the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention; or in other words 'the fraud must be in the original contract or transaction and not in its non-fulfillment.'" *Zaborowski v. Hoffman Rosner Corp.*, 43 Ill. App. 3d 21, 23 (1976) (quoting *Luttrell v. Wyatt*, 305 Ill. 274, 281 (1922)); *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 782 (N.D. Ill. 2013). Therefore, any opinions, promises, or statements of assurance made by Society regarding future insurance claims, or its failure to perform, are not actionable under a theory of intentional misrepresentation.

As to Connacht's claim that Society misrepresented the damages covered under its policy, again it fails to point to any specific false statements made by Society. Connacht alleges that Society made numerous misrepresentations such as, "[r]epeatedly telling Connacht . . . that Society had paid Connacht everything Connacht was owed under the Society Policy" and "[t]elling Connacht . . . that Society was responsible for Connacht's electronics when, in fact, Society had no intention of providing coverage for the Disputed Audio/Video Equipment." (Id. ¶ 402.) Reviewing the allegations in Count XV, it appears that Connacht merely disagrees with Society's interpretation of the policy terms and its opinion regarding what damages are covered under the policy. Therefore, the court agrees with Society that Connacht's allegations amount to an insurance coverage dispute, which cannot form the basis of an intentional misrepresentation claim. *See, e.g., Ehrhart v. UNUM Life Ins. Co. of*

*Am.*, No. 99 CV 1340, 1999 WL 498597, at *3 (N.D. Ill. July 2, 1999) (holding that "[a]n after-the-fact denial of coverage cannot give rise to the reliance required to sustain a fraud claim"); *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 528 (1996) (rejecting the plaintiff's fraud claim where "the complaint is barren of any allegations of reliance" and the plaintiff "merely alleges that the insurer is lying after the fact to avoid paying the claim"). Because Connacht's allegations describe a coverage dispute, a matter raised in the breach of contract claims in Counts III, IV, and V, Connacht fails to state a cause of action against Society for intentional misrepresentation. *See Cramer*, 174 Ill. 2d at 528 ("[A] separate tort claim is not necessary and is inapplicable . . . because a contractual remedy is available to plaintiffs."). Accordingly, the court dismisses Plaintiffs' intentional misrepresentation claim against Society.

### 2. Negligent Misrepresentation (Count XVI)

Similarly, Connacht fails to state a claim for negligent misrepresentation. (R. 41, Def.'s Mot. at 10.) "Negligent misrepresentation has essentially the same elements, except that the defendant need not know that the statement is false; rather his own carelessness or negligence in ascertaining the truth of the statement will suffice." *Avon Hardware Co.*, 2013 IL App (1st) 130750, ¶ 15. Furthermore, a plaintiff alleging negligent misrepresentation must allege that the defendant owed him a duty to communicate accurate information. *Id.* Because the dispute regarding what damages are covered under the Society policy also forms the basis of the negligent misrepresentation claim, this cause of action similarly fails because Connacht fails to plead any false statements of material fact made by Society.

9

Additionally, Connacht fails to sufficiently allege that Society had a duty to communicate accurate information. Illinois's economic loss rule, also known as the *Moorman* doctrine, "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982)). Thus, to state a cause of action for negligent misrepresentation under Illinois law, a complaint must allege facts establishing that the defendants owed a duty to communicate accurate information separate and apart from its contractual obligations. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (explaining that "exceptions [to the economic loss doctrine] have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself"). Illinois courts have recognized a duty to communicate accurate information in two circumstances: (1) "to avoid negligently conveying false information that results in physical injury to a person or harm to property"; and (2) "to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions." *Brogan v. Mitchell Int'l, Inc.*, 181 Ill. 2d 178, 183-84 (1998). Negligent misrepresentation actions are almost universally limited to situations involving a defendant who, in the course of his business or profession, supplies information for the guidance of others in their business relations with third parties. *Hoover v. Country Mut. Ins. Co.*, 2012 IL App (1st) 110939, ¶ 45.

Here Society's actions did not cause Connacht physical injury or harm to its property. Connacht alleges that Society had a duty to communicate accurate information regarding its policy coverage to avoid any additional property damage, and it seeks to recover for "extensive clean-up and repairs to remove the mold from the building" and "actual and consequential damages," including lost business opportunities and profits. (R. 36, First Am. Compl. at ¶¶ 424-25.) However, these are the types of economic damages contemplated by the *Moorman* doctrine, and thus, they are not recoverable in a negligence action. *See Moorman*, 91 Ill. 2d at 69 (defining economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property"). Furthermore, Society sold Connacht insurance, but at no time was Society in the business of providing information to aid Connacht in a business transaction with a third party. *See Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 964-65 (N.D. Ill. 2000) ("According to Illinois law, insurance carriers are not in the business of supplying information so have no duty to do so."). Therefore, contrary to Connacht's assertion, any information provided by Society was ancillary to the sale of insurance and cannot support a claim for negligent misrepresentation. *See Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 94 (2002) (the negligent misrepresentation exception to the *Moorman* doctrine is not applicable when the information supplied is "merely ancillary to the sale of a product or service or in connection with the sale"). Accordingly, the court dismisses Plaintiffs' negligent misrepresentation claim against Society.

### B. Consumer Fraud Claims (Counts VI & XIII)

Society next argues that Plaintiffs' Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claims against Society are preempted by 215 ILCS 5/155 of the Illinois Insurance Code because Connacht alleges nothing more than a breach of contract claim. (R. 41, Def.'s Mot. at 12.) Society further argues that Count XIII must be dismissed because Propitious cannot state a claim against Society under the ICFA as Propitious is not insured under the Society policy, and thus, is not a consumer. (R. 55, Def.'s Reply at 11.) Plaintiffs respond that their ICFA claims are supported with facts that are more than sufficient at this stage. (R. 50, Pls.'s Resp. at 3, 7.)

To establish a violation of the ICFA, the plaintiff must allege "(1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce." *W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 10 CV 7857, 2011 WL 2582353, at *3 (N.D. Ill. June 29, 2011) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996)). The Illinois Supreme Court has found, however, that "[a] breach of [a] contractual promise, without more, is not actionable under the Consumer Fraud Act." *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (2005). Thus, when "breach of contract and Consumer Fraud Act counts rely on the same facts," it is clear that the consumer fraud claim "is merely a breach of contract count clothed as a violation of the Consumer Fraud Act." *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704 (2005); *see Zankle v. Queen Anne Landscaping*, 311 Ill.

App. 3d 308, 312 (2000) ("Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action."). Furthermore, when a separate tort claim is essentially based on an insurer's failure to pay amounts purportedly owed under an insurance contract, such claims are preempted by contractual remedies and those found in the Illinois Insurance Code. 215 ILCS 5/155; *Young v. Allstate Ins. Co.*, 351 Ill. App. 3d 151, 171 (2004).

The court concludes that Plaintiffs fail to state a claim under the ICFA in Counts VI and XIII. Plaintiffs allege that Society engaged in deceptive practices to convince Connacht to purchase its policy and to seek reimbursement from Badger for damages that were covered under the Society policy. (R. 36, First Am. Compl. ¶¶ 307-08, 388.) Plaintiffs' ICFA claims, however, rest on the same factual foundation as their breach of contract claims. No distinct deceptive acts are alleged. *See Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (affirming dismissal of ICFA claim with prejudice where it duplicated contract claim); *In re Ventra Card Litig.*, No. 13 CV 7294, 2015 WL 1843044, at *4 (N.D. Ill. April 21, 2015) (dismissing ICFA claims for "fail[ing] to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise"). Additionally, Plaintiffs fail to satisfy the heightened pleading standard set forth in Rule 9(b), which requires that circumstances of fraud be pleaded with particularity. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (stating that when an ICFA claim alleges deception, the heightened pleading

13

standard of Rule 9(b) applies). Moreover, the court agrees with Society that Plaintiffs' ICFA claims are preempted by § 155 of the Illinois Insurance Code, which "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim is vexatious and unreasonable." *See Cramer*, 174 Ill. 2d at 513; *see also Frazin v. Paul Revere Life Ins. Co.*, No. 17 CV 2152, 2018 WL 1561732, at \*3 (N.D. Ill. March 30, 2018). Thus, the court dismisses Plaintiffs' ICFA claims.

The court also notes that even if Plaintiffs had alleged facts sufficient to state a claim under the ICFA, Society is correct that Propitious is precluded from pursuing the claim in Count XIII. To bring an ICFA claim, a plaintiff must either be a "consumer" or satisfy the "consumer nexus" test, which requires the plaintiff to "have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.,* 715 F. Supp. 2d 786, 792 (N.D. Ill. 2010). Plaintiffs concede that Propitious is not a consumer because it is not Society's insured, but incorrectly assert that it meets the consumer nexus test. (R. 50, Pls.'s Resp. at 8-9.) In Count XIII, Propitious describes Society's alleged deceptive practices impacting itself and Connacht. However, it does not allege that Society's actions were in any way directed toward the market. *See Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 739-40 (N.D. Ill. 2011) (holding that the plaintiff did not allege defendants' false representations were directed toward the market generally when plaintiff alleged only that the false representations were directed toward it and other tile installers). Moreover, Propitious fails to allege that Society's actions implicate consumer

14

protection concerns. *See MacNeil Auto. Prods.,* 715 F. Supp. 2d at 792. Because Propitious fails to plead the required nexus, it fails to state an ICFA claim against Society.

**C. Bad Faith Claim (Count VII)**

Finally, Society urges the court to dismiss Connacht's bad faith claim under § 155 of the Illinois Insurance Code, arguing that it is insufficiently pled with boilerplate, conclusory allegations that Society acted "wrongfully, vexatiously, unreasonably and outrageously." (R. 41, Def.'s Mot. at 14.) Connacht responds that it has pled specific examples of bad faith on Society's part, including Society's refusal to take steps to clarify the dispute between the insurers. (R. 50, Pls.'s Resp. at 6.)

Section 155 of the Illinois Insurance Code "allows for an award of attorney fees and costs for an insurer's 'unreasonable and vexatious' refusal to comply with its policy obligations." *John T. Doyle Trust v. Country Mut. Ins. Co.,* 2014 IL App (2d) 121238, ¶ 28. However, "[i]f a *bona fide* coverage dispute exists, an insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sanctions." *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 397 Ill. App. 3d 410, 426 (2009) (emphasis in original).

The court first rejects Society's contention that Rule 9(b)'s heightened pleading standard applies to Connacht's bad faith claim. *See Kennedy v. Venrock Assocs.,* 348 F.3d 584, 593 (7th Cir. 2003) (holding that Rule 9(b) applies only to claims of fraud and mistake); *Wheeler v. Assurant Specialty Prop.*, 125 F. Supp. 3d 834, 840 (N.D. Ill. 2015) (refusing to apply Rule 9(b) to the plaintiff's bad faith claim although deception

15

was implicated in the pleading); *GMP Techs., LLC v. Zicam, LLC*, No. 08 CV 7077, 2009 WL 5064762, at *3 (N.D. Ill. Dec. 9, 2009) (finding bad faith allegations subject to Rule 8(a)).

But the court accepts Society's argument that Connacht fails to state a claim for bad faith under § 155. Connacht alleges that Society violated § 155 when it failed to pay all or part of its damage and/or lost business income claims, knowingly misrepresented relevant facts, failed to communicate promptly or regularly, failed to properly investigate Connacht's claim, forced Connacht to litigate its rights under the policy, and unreasonably delayed settling Connacht's claim. (R. 36, First Am. Compl. ¶¶ 315-20.) Although Connacht alleges that Society has not paid all it is owed under the policy, it fails to plead sufficient facts that show Society wrongfully and unreasonably refused to comply with its policy obligations. *See Emerson v. Am. Bankers Ins. Co. of Fla.,* 223 Ill. App. 3d 929, 936 (1992) (holding that an insurer's mere refusal to pay claim does not constitute breach of duty of good faith and fair dealing, but rather refusal to pay must be accompanied by "vexatious, unreasonable, outrageous conduct"). Instead, the complaint reveals that Society participated in discussions to attempt to resolve the coverage dispute, (R. 36, First Am. Compl. ¶ 165), investigated Connacht's claim, including retaining a third-party adjuster to evaluate the damage to the audiovisual equipment, (id. ¶ 67), and made payments for those damages that it determined were covered under the policy in excess of $142,000, (id. ¶¶ 120, 121, 315). Furthermore, because a bona fide coverage dispute exists regarding which items are covered under the policy, Society's actions cannot be

16

considered "vexatious or unreasonable" under § 155. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (holding that statutory penalties under § 155 "may not be awarded simply because an insurer takes an unsuccessful position in litigation, but only where the evidence shows that the insurer's behavior was willful and without reasonable cause"). Accordingly, Connacht fails to state a § 155 claim against Society.

## Conclusion

For the foregoing reasons, Society's motion to dismiss is granted to the extent that the court dismisses Counts VI, VII, XIII, XV, and XVI without prejudice.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**